UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 07-60839-CIV-COOKE/BANDSTRA

DANA C. JONES, through his
guardian CHERYL ALBERT,

    *Plaintiff*,

v.

AL LAMBERTI, Sheriff of Broward
County, *et al.*,

    *Defendants*.

_____/

## ORDER GRANTING BROWARD COUNTY'S
## MOTION FOR SUMMARY FINAL JUDGMENT

Broward County Board of County Commissioners ("County") has filed a motion for summary judgment [D.E. 80] on Count XII of the Complaint.[1] The County argues that summary judgment should be entered in its favor because it has no authority or control over the Sheriff's jail operations. I agree.

### I. BACKGROUND

Dana Jones ("Jones") was a pretrial detainee at the Broward County jail. On December 16, 2005, jail correctional personnel discovered Jones lying unconscious on the floor of his housing unit with visible head and facial injuries. At the time of Jones's detention, the Sheriff and the County were subject to a 1995 consent decree stemming from *Carruthers v. Cochran*, No. 76-6068 (S.D. Fla. July 27, 1994). The consent decree sets forth requirements for conditions of confinement in the jail system, and sets forth guidelines for the construction and maintenance of new facilities. Both

---

[1] The County also moved for summary judgment on Count XIII of the Complaint; however, Count XIII has already been dismissed. *See* D.E. 109.

the County and the Sheriff are bound by the terms of the consent decree. *See Carruthers v. Cochran*, No. 76-6068, at 4.

In his Complaint, Jones alleges that the County tolerated a pattern of abuse of lawful authority and failed to maintain a system of review of incidents involving such abuse. The Complaint also alleges that, because the policymaking authority of the Sheriff has been delegated to the County, the Sheriff's actions represent the official policies of the County. The County has moved for summary judgment arguing that, because the County has no control over the Sheriff and because the Sheriff is the final policymaker with respect to the operation of the jails, the County cannot be liable for the Sheriff's unconstitutional policies. In turn, Jones argues that, not only does the Sheriff function as the County's policymaker with respect to the operation of the jails, the *Carruthers* consent decree places the duty and responsibility for the policies, planning and operation of the county jails on both the County and the Sheriff.

## II.  LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). According to the U.S. Supreme Court, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. . . [o]nly when

that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "'may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1984) (stating "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). The Court, however, must view the evidence in the light most favorable to the nonmoving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Furthermore, the court may not weigh conflicting evidence to resolve disputed factual issues; if a genuine dispute is found, summary judgment must be denied. *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1140 (11th Cir. 2007) (citing *Carlin Commc'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

### III.  DISCUSSION

"A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998). To determine whether Broward County is liable under § 1983, I must "identify those officials or governmental bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Id.* (citing *McMillian v.*

*Monroe County, Ala.*, 520 U.S. 781 (1997)). This task is broken down into two inquiries. First, I must identify the particular area or issue for which the government official is alleged to be the final policymaker. *Id.* (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Second, I must examine Florida law, as the "actual function" of an official in a particular area is determined by "the definition of the official's functions under relevant state law."

To determine what actions Jones has alleged to have caused the constitutional violation in question, I turn to Count XII of Jones's Complaint. This Count alleges that the County failed to control Jenne, who was the Sheriff at the time that Jones was incarcerated. It further alleges that the County tolerated a pattern of abuse of lawful authority and that it does not have a meaningful system of review in place to investigate incidents involving such abuse by deputy sheriffs. Lastly, Jones alleges that the deliberate indifference of the County violated his constitutional rights under § 1983.

In his brief, Jones frames the question presented as follows: "The issue is whether, in his capacity as Chief Correctional Officer for Broward County, the Sheriff acts as a county policymaker under the laws of the State of Florida." Pl.'s Resp. Mot. Summ. J. at 4. Therefore, the contested issues appear to be whether the Sheriff functions as the County's policymaker when he runs the jails and whether the County has the ability to control the Sheriff. The answers to these questions turn on state law. *Turquitt.*137 F.3d at 1288 (turning to Alabama state law to determine whether the Sheriff functions as the County's policymaker). The federal judiciary has been instructed to "'respect state and local law's allocation of policymaking authority,' and not 'assume that final policymaking authority lies in some entity other than that in which state law places it." *Id.*

A.   <u>State Law</u>

I will, therefore, first turn to the Florida Constitution to determine what powers, if any, it grants the Sheriff and the County. The Broward Sheriff is an elected, independent constitutional

officer.[2] Article VIII, § 1(d) of the Florida Constitution states: "There shall be elected by the electors of each county, for terms of four years, a sheriff . . . ." Jones points out that the Florida Constitution labels the Sheriff a county officer. The Supreme Court has explained, however, that state law cannot answer the question of whether an official functions as the County's policymaker rather than the state's by simply labeling as a county official an official who clearly makes state policy. *See McMillian v. Monroe County, Ala.*, 520 U.S. 781, 786 (1997) (concluding that simply labeling a state official an official who clearly makes county policy is not enough to establish that the official is a state policymaker); *Troupe v. Sarasota County, Fla.*, No. 8:02-cv-53, 2004 WL 5572030, at *11 (S.D. Fla. Jan. 22, 2004). As previously stated, "our understanding of the actual function of a governmental official, in a particular area, will necessarily be dependent on the definition of the official's functions under relevant state law. *Id.*

The Florida Constitution divides the state into political subdivisions called counties. Fla. Const. art. VIII, § 1(a). Article VIII, §§ 1(f) and (g) of the Constitution provide for charter and non-charter counties. Broward County has been a charter county since January 1, 1975. Broward County, Fla., County Charter Introduction, available at

---

[2] The governor's power to institute judicial proceedings against the Sheriff and to suspend the sheriff from his duties is further evidence that the Sheriff is a state official with final policymaking authority over the jails. Under Article IV, § 1(b) of the Florida Constitution, "the governor may initiate judicial proceedings in the name of the state against any . . . county or municipal officer to enforce compliance with any duty or restrain any unauthorized act." Article IV, § 7(a) further gives the governor the power to suspend a sheriff from his duties. The Alabama Constitution similarly gives the governor the power to impeach a sheriff. *See Turquitt*, 137 F.3d at 1288 (finding that the Alabama Constitution gives the governor the authority to impeach a sheriff). In *Turquitt*, the Court found that the giving of this authority to the governor sent a clear message that a sheriff is a state officer, "whose actions with respect to the well-being of jail inmates are most appropriately controlled by state officials." *Id.* at 1289; *see also Troupe v. Sarasota County, Fla.*, No. 8:02-cv-53, 2004 WL 5572030, at *11 (S.D. Fla. Jan. 22, 2004) (finding that the governor's power to suspend the sheriff is one of several factors suggesting that the sheriff is a state actor with respect to law enforcement).

http://www.broward.org/charter/charterintro.htm. The Charter brought home rule to Broward County. *Id.* "Charter counties possess more autonomy than non-charter counties." John F. Cooper & Thomas C. Marks, Jr., Florida Constitutional Law 375 (Carolina Academic Press, 3rd ed. 2001). In Florida, charter counties have the powers explicitly granted them by their charters. "The source of the governmental power of such counties is the county charter, authorized by the Florida Constitution, which in many ways acts as a type of constitution for the charter county." *Id.* The legislature can only impact on the powers of self-government of a charter county through a general law, or a special law which is approved by a vote of the electors in the affected county. *Id.* Because Florida charter counties possess inherent authority (policymaking and otherwise), we must look to the Administrative Code of Broward County, which contains its ordinances, resolutions, administrative rules and regulations, and laws of the state, to determine what role the County plays in the operation of the jails. Broward County, Fla., Admin. Code preface. We must also review Florida Statutes since the County may only enact ordinances that are consistent with general law. *See* Cooper & Marks, *supra*, at 375 (stating that, in a charter county, "the county may enact all ordinances that are consistent with general law").

A review of the relevant Florida statutes and the County's Administrative Code supports my conclusion that Florida sheriffs act as state officers when supervising inmates and otherwise operating the county jails. A sheriff's powers, duties and compensation are prescribed by the Florida legislature. *See* Fla. Stat. §§ 30.15 (listing sheriffs' powers, duties, and obligations), 30.22 (specifying when sheriffs may accept service), 30.49 (instructing each sheriff to certify a proposed budget of expenditures to the board of county commissioners and allowing sheriff to appeal county's decision regarding his budget to the governor), 30.50 (directing the payment of salaries and expenses for the sheriff's office), 30.555 (allowing sheriffs to obtain liability insurance), 145.071 (setting

sheriffs' salaries), 951.033 (allowing sheriffs to direct prisoners to pay subsistence costs). Although the County pays the Sheriff's compensation and funds his office, these factors are insufficient for me to find that a county in Florida has control over the sheriff that services the county. *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1340 n.25 (11th Cir. 2003); *Troupe*, 2004 WL 5572030, at *12. The Supreme Court in *McMillian* stated: "The county's payment of the sheriff's salary does not translate into control over [the sheriff], since the county neither has the authority to change his salary nor the discretion to refuse payment completely." 520 U.S. at 791. "Similarly, counties in Florida do not have authority to change a sheriff's salary or to refuse payment completely." *Troupe*, 2004 WL 5572030, at *12.

Furthermore, the County is expressly authorized by Florida law to delegate jail operations to the Sheriff. Florida Statute § 951.061(1) provides: "Upon adoption of an ordinance by a majority of the county commission, the sheriff may be designated the chief correctional officer of the county correctional system, and the sheriff shall appoint such officers as he or she deems necessary." The County enacted a 1987 ordinance designating the Sheriff "Chief Correctional Officer of the Broward County Correctional System." Broward County Code of Ordinances § 18-01. As Chief Correctional Officer, the Sheriff is "solely responsible for the operation of the existing correctional System." Broward County Admin. Code § 18.40. His duties include appointing officers to perform correctional duties and enforcing all existing state law concerning the operation and maintenance of county jails. *Id.*

The County has some duties with respect to county jails; however, none of these duties relate to the daily operation of the jails or to the supervision of inmates. Furthermore, the County does not have any supervisory control over the Sheriff. The Florida Supreme Court has held that "the internal operation of the sheriff's office . . . is a function which belongs uniquely to the sheriff as the chief

law enforcement officer of the county." *Weitzenfeld v. Dierks*, 312 So. 2d 194, 196 (Fla. 1975). The court went on to state: "To hold otherwise would do irreparable harm to the integrity of a constitutionally created office as well as violate the precept established by F.S. Section 30.53 . . . ." *Id.* Florida Statute § 30.53 establishes the independence of the Sheriff as a constitutional official. It provides: "The independence of the sheriffs shall be preserved concerning the purchase of supplies and equipment, selection of personnel, and the hiring, firing, and setting of salaries of such personnel." Nowhere in the Florida statutes or in the County's Administrative Code is the County given control over the Sheriff with respect to his daily operation of the jails.

### B.    *Consent Decree*

Jones argues that the language and terms of the *Carruthers* consent decree plainly places the duty and responsibility for the policies, planning and operation of the county jails on both the County and the Sheriff. The County does not dispute that it is bound by the consent decree, but argues that it is only bound by it to the extent that it requires the construction and funding of additional jail facilities.

The consent decree places on the County the responsibility for building new detention facilities and it places on the Sheriff the responsibility for operating the detention facilities. The decree contemplates that both the County and the Sheriff will work together in these respective capacities to address the unconstitutional conditions of confinement that were present in *Carruthers*. It does not, however, change their functions under state law to make the County the final policymaker on the operation of the jails or the Sheriff an actor for the County. For example, the subsection of the consent decree titled "Jail Population Management Plan" reads, in pertinent part, as follows: "The Sheriff shall develop a plan of how the prisoner population will be managed. The plan will include, but not be limited to, a Prisoner Classification Plan, a Housing Unit Assignment

Plan, and an Alternatives to Incarceration Plan." The County is not mentioned anywhere in that paragraph. The subsection of the consent decree titled "Capital Projects Management Plan" reads, in pertinent part, as follows: "Broward County, with the Sheriff's participation, shall develop a Capital Projects Management Plan to provide funding for renovation of existing facilities and construction of proposed facilities in conformity with the intent of this agreement." Although the sentence contemplates that the Sheriff will assist the County in developing a plan for the renovation and construction of detention facilities, it does not change the parties' responsibilities under state law. Even though the Sheriff agrees to help the County fulfill its obligation regarding the construction of new facilities, the consent decree does not make the Sheriff a county final policymaker in this area. Similarly, the decree does not make the County the final policymaker with regard to the operation of the detention facilities, nor does it give the County control over the Sheriff.

## IV.  CONCLUSION

Accordingly, Broward County's Motion for Summary Final Judgment [D.E. 80] is granted. The Sheriff is the final policymaker for the operation of the jails. The County does not control the Sheriff with respect to this function; therefore, the County cannot be liable under § 1983.

**DONE AND ORDERED** in Miami, Florida, this 28th day of August 2008.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

cc:

All counsel of record